COLEMILL ENTERPRISES, INC., )
                           )
     Plaintiff/Appellant,   ) Appeal No.
                           ) 01-A-01-9605-CH-00218
v.                         )
                           ) Davidson Chancery
JOE HUDDLESTON, Commissioner of ) No. 94-3217-I
Tennessee Department of Revenue, )
                           )
     Defendant/Appellee.    )

FILED

December 4, 1996

Cecil W. Crowson
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE

MIDDLE SECTION AT NASHVILLE


APPEAL FROM THE CHANCERY COURT FOR DAVIDSON COUNTY

AT NASHVILLE, TENNESSEE


THE HONORABLE IRVIN H. KILCREASE, JR., CHANCELLOR


RICHARD L. COLBERT
Cornelius & Collins
Suite 2700
Nashville City Center
511 Union Street
P. O. Box 190695
Nashville, Tennessee  37219
     ATTORNEY FOR PLAINTIFF/APPELLANT


CHARLES W. BURSON
Attorney General and Reporter

STEVEN M. RODERICK
Assistant Attorney General
Attorney General's Office
Tax Division
404 James Robertson Parkway
Suite 2121
Nashville, Tennessee  37243-0489
     ATTORNEYS FOR DEFENDANT/APPELLEE


AFFIRMED AND REMANDED

SAMUEL L. LEWIS, JUDGE

O P I N I O N

This is an appeal by plaintiff/appellant, Colemill Enterprises, Inc. ("Colemill"), from a decision of the chancery court which affirmed the determination of defendant/appellee, Joe Huddleston, Commissioner of the Tennessee Department of Revenue ("Commissioner"), that Colemill owed certain state and local sales and use taxes. The facts out of which this matter arose are as follows.

Colemill's business involves aircrafts. In addition to other services, Colemill performs aircraft conversions. To explain, Colemill alters an aircraft by introducing major changes in the original type design of the aircraft. The major changes include changes in engine, propellers, wings, and other fundamental parts of the aircraft. These changes alter the aircraft such that the aircraft leaves Colemill with a new type designation, new performance characteristics, a new Pilot's Operating Handbook, and a new Federal Aviation Administration ("FAA") approved Flight Manual Supplement. In order to perform this service, Colemill holds supplemental type certificates issued to it by the FAA. Colemill must follow the product design approved by the FAA and upon which the supplemental type certificates are based. Federal law prohibits Colemill from introducing unapproved variations into the conversion process.

The Commissioner performed a sales and use tax audit of Colemill's books and records for the period of January 1991 through March 1994. The Commissioner concluded that Colemill's conversions were installation services performed in Tennessee and therefore subject to taxation pursuant to Tennessee Code Annotated section 67-6-201(1). In addition, the Commissioner concluded that Colemill

2

was subject to certain local sales and use taxes pursuant to Tennessee Code Annotated section 67-6-702(a). Based on these conclusion, the Commissioner assessed a tax liability against Colemill in the amount of $20,714.00.

Colemill filed this action on 21 October 1994 challenging the tax assessment. Colemill alleged that its conversions were exempt because they were manufactured for export. Tenn. Code Ann. § 67-6-313(a)(1994 & Supp. 1996). Colemill also alleged that the Commissioner improperly assessed the local sales and use tax because it considered the sale of each installed aircraft part as a sale of a single article instead of treating the entire conversion as a single article and because it failed to apply the $1,600.00 cap found in Tennessee Code Annotated section 67-6-702(a)(1).

The trial court entered its final judgment on 26 February 1996. The court granted the Commissioner's motion for summary judgment and denied Colemill's motion for summary judgment. Specifically, the court held that Colemill did not manufacture aircrafts for export. Instead, the court held that Colemill provided an installation service subject to Tennessee sales and use tax. In addition, the court concluded that the Commissioner properly assessed the local sales and use tax due on the sale of the conversions. The court awarded the Commissioner a judgment against Colemill in the amount of $23,946.65 and reasonable attorney's fees.

Colemill filed its notice of appeal on 29 February 1996 and presented the following issues.

> I. Did the Chancellor err in concluding that Colemill's conversion sales were taxable as "installation services" under Tenn. Code Ann. § 67-6-102(23)(F)(vi)?
> II. Did the Chancellor err in concluding that

3

Colemill is not a manufacturer or producer of its "conversions" for purposes of Tenn. Code Ann. § 67-6-313(a)?

III. Did the Chancellor err in concluding that the single article limitation on local option sales taxes under Tenn. Code Ann. § 67-6-702(d) does not apply to Colemill's "conversions?"

**I.    Whether Colemill's conversion sales were taxable as installation services under Tennessee Code Annotated section 67-6-102(23)(F)(vi).**

Colemill contends that Tennessee Code Annotated section 67-6-102(23)(F)(vi) only taxes installation services that are separately invoiced.  In support of this conclusion, Colemill cites the rule that taxing statutes are to be construed in favor of the taxpayer and the decision in *Eusco, Inc. v. Huddleston*, 835 S.W.2d 576 (Tenn. 1992).

**A.    Statutory Arguments**

Tennessee Code Annotated title 67, chapter 6 provides that any person who "[e]ngages in the business of selling tangible personal property at retail" in Tennessee is exercising a taxable privilege.  Tenn. Code Ann. § 67-6-201(1)(1994).  A sale at retail includes the provision of certain services such as the following:

> The installing of tangible personal property which remains tangible personal property after installation where a charge is made for such installation whether or not such installation is made as an incident to the sale thereof and whether or not any tangible personal property is transferred in conjunction with such installation services . . . .

*Id.* § 67-6-102(23)(F)(vi)(1994 & Supp. 1996).

We are of the opinion that the rule of statutory construction relied upon by Colemill does not apply to the instant case.  This court finds no need to construe the unambiguous language of Tennessee Code Annotated section 67-6-102(23)(F)(vi).

4

The section is not susceptible to a two-fold meaning. Therefore, this court does not need to construe it. *Middleton v. Allegheny Elec. Co.,* 897 S.W.2d 695, 698 (Tenn. 1995); *Kendrick v. Kendrick*, 902 S.W.2d 918, 923 (Tenn. App. 1994); *Tennessee Manufactured Hous. Ass'n v. Metropolitan Gov't of Nashville*, 798 S.W.2d 254, 257 (Tenn. App. 1990). Because the statute is unambiguous, we must determine the scope and meaning of Tennessee Code Annotated section 67-6-102(23)(F)(vi) by looking to the plain language contained within the four corners of the statute without resorting to statutory construction. *Carson Creek Vacation Resorts, Inc. v. State*, 865 S.W.2d 1, 2 (Tenn. 1993). Because there is no need to construe the statute, Colemill's reliance on the general rule of statutory construction is misplaced.

Here, the language of the statute is plain and unambiguous. Thus, the ordinary and natural meaning of the language is conclusive. The legislative intent is clearly expressed on the face of the statute, and the courts should implement this intent. *Fultz v. Gilliam*, 942 F.2d 396, 400 (6th Cir. 1991); *Carson Creek*, 865 S.W.2d at 2. The legislative intent expressed on the face of Tennessee Code Annotated section 67-6-102(23)(F)(vi) is to tax certain installation services, not to make the statute's taxing mandate dependant on the taxpayer's method of invoicing.

The interpretation of the statute indicated by Colemill contradicts the intent of the legislature and leads to an absurd result that the text of the statute does not support. The language of the statute does not show that the legislature intended the statute to require providers to separately invoice charges for installing tangible personal property as a condition to taxation. The statute requires only that the provider charge for the services, not render them gratuitously, and that any tangible

5

personal property installed remain tangible personal property after installation.

We also reject Colemill's interpretation of the statute because it is a forced construction that impermissibly and arbitrarily restricts the section's scope to less than that intended by the legislature. *Carson Creek*, 865 S.W.2d at 2. The interpretation put forward by Colemill effectively amends the statute by adding a completely new requirement not contemplated by the legislature. We cannot insert extra statutory requirements into a statute's text under the guise of statutory construction. *See Loftin v. Langsdon*, 813 S.W.2d 475, 480 (Tenn. App. 1991). It is not necessary that this statute be construed, only read, in order to conclude that by its terms the statute levies a sales and use tax on the installation services provided by Colemill.

B. *Eusco v. Huddleston*

We are also of the opinion that *Eusco v. Huddleston*, 835 S.W.2d 576 (Tenn. 1992), does not support Colemill's argument that the provider must separately invoice an installation charge for it to be taxable under the statute. Colemill contends that the following language supports its argument.

> While it is true that a substantial part of Eusco's costs were for purchasing and installing the hydraulic booms, Eusco made no separate charge for installation services as is required for the application of Tenn. Code Ann. § 67-6-102(23)(F)(vi). In each of the sales, the contract provided for one price which covered all personal property and labor involved in building and attaching the truck body, including all component parts.

*Eusco,* 838 S.W.2d at 581.

We are of the opinion that Colemill's interpretation of *Eusco* is without merit. Our reading of *Eusco* leads us to believe

6

that it requires only that a true and distinct charge be made for the installation services. The installer must charge for the service he provides and not render it gratuitously.

Because installation service providers often provide tangible personal property and then install it as part of the transaction, the variety of mixed transactions that can arise under this statute are numerous. For example, it is not uncommon for dealers to offer free installation of the goods they sell as an incentive to customers to purchase the goods. Such cases are not taxable because no true and distinct charge is made for the installation of the tangible personal property. However, where a dealer provides tangible personal property, installs it, and charges the customer for the installation there is a true and distinct charge for the installation separate from the charges made for the goods regardless of whether the installation charge is separately itemized on the invoice.

The court's use of the term "separate charge" in *Eusco* describes exactly the charges Colemill routinely makes for installing aircraft parts onto its customer's aircraft. These are true and distinct charges made in the course of a mixed transaction where tangible personal property is provided and installed with a charge being levied for both. A customer is charged for the high performance parts Colemill provides and for the highly sophisticated labor it takes to install those parts. Neither is gratuitous and both are separate from the other. The fact that the sale and installation of the parts occurs fairly close in time to each other in the course of a conversion does not obviate the separate identity of the transaction's components nor alter the fact that Colemill does indeed make a separate charge for installing aircraft parts onto its customer's planes.

7

### C.    Conclusions

Colemill attempts to have us adopt an interpretation of the statute which makes the tax dependent on the manner of invoicing used by the service provider.  This is contrary to the mandate of the legislature expressed in Tennessee Code Annotated section 67-6-102(23)(F)(vi).  While it might be easier for the Department of Revenue to administer Tennessee Code Annotated section 67-6-102(23)(F)(vi) if the taxpayers itemized their invoices, the legislature did not intend such a requirement nor did the Supreme Court of Tennessee impose such a requirement.  Colemill's failure to separately invoice the installation charge does not release Colemill from the clear operation of the statute.  The chancellor correctly held that Colemill's installations were taxable under the statute.

**II.    Whether Colemill is a manufacturer or producer of its conversions for the purposes of Tennessee Code Annotated section 67-6-313(a).**

Colemill argues that it is entitled to the exemption found in Tennessee Code Annotated section 67-6-313(a).  This section provides that "[i]t is not the intention of this chapter to levy a tax upon articles of tangible personal property imported into this state or produced or manufactured in this state for export."  Tenn. Code Ann. § 67-6-313(a)(1994 & Supp. 1996).  Colemill maintains that Tennessee Code Annotated section 67-6-313(a) exempts it from the sales and use tax because it manufactured the aircrafts for export.

"Every presumption is against the exemption and a well-founded doubt is fatal to the claim." *Tibbals Flooring Co. v. Huddleston*, 891 S.W.2d 196, 198 (Tenn. 1994).  Moreover, Colemill

bears the heavy burden of proving its entitlement to the exemption because no exemption will be implied and because this court must construe the statutory exemption against Colemill. *LeTourneau Sales & Serv. v. Olsen*, 691 S.W.2d 531, 534 (Tenn. 1985). Our review of this record, *LeTourneau,* and *Eusco* convinces us that the chancellor correctly held that Colemill did not manufacture its aircraft conversions.

**III.    Whether the single article limitation on local option sales tax under Tennessee Code Annotated section 67-6-702(d) applies to Colemill's conversions.**

Colemill considered each sale of its conversions to be the sale or use of a single article of personal property for purposes of the local sales and use tax. The Commissioner argued that this treatment of the conversions was incorrect and resulted in Colemill remitting tax, not on the proper amount, but only on the first $1,600.00 charged for each conversion. It is the Commissioner's argument that under Tennessee Code Annotated section 67-6-702(a)(1) Colemill should have remitted taxes on the full amount it charged for its installation services and on the sales price of each aircraft part it sold up to the $1,600.00 cap.[1]

Colemill did not invoice its charges for installation separately from its charges for selling the aircraft parts. Therefore, the Commissioner could not determine what portion of Colemill's charges were subject to the $1,600.00 cap and which

---

[1]Tennessee Code Annotated section 67-6-702 provides, in pertinent part, as follows:

> Tax authorized - Rates - Termination of services tax. - (a)(1) Any county by resolution of its county legislative body or any incorporated city or town by ordinance of its governing body is authorized to levy a tax on the same privileges subject to this chapter as the same may be amended, which are exercised within such county, city or town, to be levied and collected in the samemanner and on all such privileges but not to exceed two and three-fourths percent (2 3/4 %); provided, that the tax levied shall apply only to the first one thousand six hundred dollars ($1,600) on the sale or use of any single article of personal property.

Tenn. Code Ann. § 67-6-702(a)(1)(1994 & Supp. 1996).

charges were not. Thus, the Commissioner taxed Colemill on the full amount it charged for its conversions.

The Commissoner argued that its assessment was correct for two reasons. First, the Commissioner properly levied the tax because the $1,600.00 cap did not apply to installation services meaning the taxable amount was the full amount Colemill charged for its installation services. Second, because each aircraft part installed by Colemill is commonly understood to be a single article, the Commissioner correctly disallowed Colemill's attempt to characterize the entire conversion as a single article and properly assessed the tax on the full conversion price. Because Colemill presented no itemized invoices, assessing tax on the full conversion price was the only way the Commissioner could insure that the full amount of the installation services were taxed and that the aircraft parts were properly taxed as single articles.

### A.   Installation Services

Pursuant to the statute, local governments in Tennessee are plainly authorized to levy taxes on any privilege deemed taxable in title 67, chapter 6. Tenn. Code Ann. § 67-6-702(a)(1)(1994 & Supp. 1996). One taxable privilege is installing tangible personal property for a charge. *Id.* 67-6-102(23)(F)(vi). Thus, local governments can and do levy a tax of up to 2 3/4 percent on installation services rendered within their taxing jurisdictions. We are also of the opinion that the statute plainly provides that local governments may tax the entire amount of the taxable service provided. Unlike the sale or use of personal property, services are not subject to the statute's restriction that local governments may levy a tax only on the first $1,600.00 charged for each single article of personal property. The legislature has expressly

10

limited the $1,600.00 cap only to the sale or use of personal property and, by doing so, authorized local governments to tax the full price charged for those services identified as taxable by title 67, chapter 6. *See id*. § 67-6-702(a)(1). The chancellor correctly held that the Department of Revenue properly assessed the local sales and use tax against Colemill on the total amount charged for its installation services.

### B.    Separate Articles

We are of the opinion that the chancellor correctly held that the aircraft parts installed by Colemill were each single articles subject to the local sales and use tax under Tennessee Code Annotated section 67-6-702. The relevant portion of that statute provides:

> (d) "Single article" means that which is regarded by common understanding as a separate unit exclusive of any accessories, extra parts, etc., and that which is capable of being sold as an independent unit or as a common unit of measure, a regular billing or other obligation. Such independent units sold in sets, lots, suites, etc., at a single price shall not be considered a single article.

Tenn. Code Ann. § 67-6-702(d)(Supp. 1996).

An oil pump is separate and distinct from a hose or an engine. The fact that a provider may install all of these parts at the same time and as part of the same service does not alter their nature as separate, functional units. By common understanding, an oil pump or an engine perform their functions independently, have intrinsic value, and do not lose their separate identity simply because they become part of an aircraft. Colemill relies heavily on the fact that the FAA requires that some of these aircraft parts be installed with certain other parts as part of a conversion; however, we find this argument unpersuasive. The fact that the oil

11

pump is one of many parts Colemill installs in the course of an FAA approved conversion does not alter the identity of an oil pump as a single, individual part of an aircraft.

Further, two decisions of the Tennessee Supreme Court support the Commissioner's assertion that each aircraft part Colemill installs is a single article. *Executone of Memphis, Inc. v. Garner*, 650 S.W.2d 734 (Tenn. 1983); *Honeywell Information Sys., Inc. v. King*, 640 S.W.2d 553 (Tenn. 1982). In both *Executone* and *Honeywell* the taxpayers argued, as Colemill does in the instant case, that because the components sold were interdependent and conveyed together as a part of a whole system they were not single articles, but rather the sum of the system was a single article. The supreme court rejected these arguments in both of the foregoing cases. *Executone*, 650 S.W.2d at 736-37; *Honeywell*, 640 S.W.2d at 554. We likewise reject Colemill's argument in the instant case. The chancellor correctly held that the Commissioner properly calculated the local sales and use tax assessment.

## IV. Conclusion

We have considered each of the arguments of Colemill and find them to be without merit. Finally, we have considered the Commissioner's motion that it be awarded attorney fees and litigation expenses under Tennessee Code Annotated section 67-1-1803 and are of the opinion that this is not a proper case for the award of such fees.

Therefore, it results that the judgment of the chancellor is in all things affirmed, and the cause is remanded to the chancery court for further necessary proceedings. Costs on appeal are taxed to plaintiff/appellant, Colemill Enterprises, Inc.

12

                                    _____
                                    SAMUEL L. LEWIS, JUDGE

CONCUR:

_____
BEN H. CANTRELL, JUDGE

_____
WILLIAM C. KOCH, JR., JUDGE

13