In re TAYLOR & ASSOCIATES,
L.P., Debtor.

James S. Bush, Johnson & Gaylon, Inc.,
Dr. Robert E. Hall, Individually, Rob-
ert E. Hall, M.D., Trustee for Robert
E. Hall, M.D., P.A. Money Purchase
Pension Plan, Robert E. Hall, M.D.,
Trustee for Robert E. Hall, M.D., P.A.
Defined Benefit Plan, and Robert E.
Hall, M.D., P.A., Appellants,

v.

Dudley W. Taylor, Appellee.

Nos. 95–33024, 3:98–CV–300.

United States District Court,
E.D. Tennessee,
at Knoxville.

Dec. 23, 1998.

Stephen A. McSween, Herbert H. Slatery, III, Reese K. Thomas, Egerton, McAfee, Armistead & Davis, P.C., Knoxville, TN, for James S. Bush and Johnson & Galyon, Inc.

C. Mark Troutman, McCord & Troutman, P.C., Knoxville, TN, for Robert E. Hall, individually, Robert E. Hall, M.D., Trustee for Robert E. Hall, M.D., P.A. Money Purchase Pension Plan, Robert E. Hall, M.D., Trustee for Robert E. Hall, M.D., P.A. Defined Benefit Plan, and Robert E. Hall, M.D., P.A.

David H. Jones, The Taylor Law Firm, Knoxville, TN, for Dudley W. Taylor.

## *MEMORANDUM*

COLLIER, District Judge.

In this appeal from a final decision of the United States Bankruptcy Court for the Eastern District of Tennessee (Rec-

ord 40)[1] entered on April 3, 1998 (Stair, C.J.), the Appellants James S. Bush, Johnson & Gaylon, Inc., Dr. Robert E. Hall, individually, Robert E. Hall, M.D., Trustee for Robert E. Hall, M.D., P.A. Money Purchase Pension Plan, Robert E. Hall, M.D., Trustee for Robert E. Hall, M.D., P.A. Defined Benefit Plan, and Robert E. Hall, M.D., P.A. (collectively "Appellants") challenge the Bankruptcy Court's decision dismissing Appellants' involuntary bankruptcy petition filed against Taylor & Associates, L.P.

Jurisdiction to hear appeals from the Bankruptcy Court is conferred by 28 U.S.C. § 158. In determining appeals from Bankruptcy Court, this Court sits as an appellate court, reviewing the Bankruptcy Court's findings of fact under a clearly erroneous standard, but conducting a *de novo* review of the Bankruptcy Court's conclusions of law. *Fed. R. Bankr.P.* 8013; *In re Isaacman*, 26 F.3d 629, 631 (6th Cir.1994); *Harbour Lights Marina v. Wandstrat*, 153 B.R. 781 (S.D.Ohio 1993). However, the Court may overturn matters within the discretion of the Bankruptcy Court only for an abuse of discretion. *Fed. R. Bankr.P.* 8003; *American Imaging Services, Inc. v. Eagle–Picher Industries, Inc. (In re Eagle–Picher Industries, Inc.)*, 963 F.2d 855, 858 (6th Cir.1992); *accord Investors Credit Corp. v. Batie*, 995 F.2d 85, 88 (6th Cir.1993).

Appellants present two issues for review: (1) whether clear and convincing evidence is the appropriate standard for evaluating the existence of a partnership in Tennessee; and (2) whether the Bankruptcy Court erred in failing to find Taylor & Associates, L.P. was a general partnership whose partners consisted of Joseph C. Taylor and Dudley W. Taylor. Having considered the arguments of the parties and after carefully reviewing the briefs and the applicable law, the Court AF-

FIRMS the Bankruptcy Court's dismissal of the involuntary petition.

## I. *PERTINENT FACTS*

The memorandum accompanying the Bankruptcy Court's decision extensively and very thoroughly details the facts in this case (Record 39). Thus, the Court will proceed with only a basic procedural history.

Joseph C. Taylor lived and worked in Knoxville, Tennessee, as a securities broker and private businessman. Joseph Taylor functioned under several business names, including Joseph C. Taylor, Taylor & Associates, Inc., Taylor & Associates, Joseph C. Taylor & Associates, Inc., and Taylor & Associates, L.P. The evidence indicates Joseph Taylor operated a Ponzi scheme and when the scheme began to fall apart, Joseph Taylor committed suicide on November 3, 1995.

In an attempt to recover some of the monies invested with Joseph Taylor, on November 13, 1995, Appellant James S. Bush commenced this Chapter 7 case with the filing of an involuntary petition against Taylor & Associates, L.P. The involuntary petition was subsequently joined by twelve creditors. On December 1, 1995, Dudley Taylor filed a motion to dismiss the involuntary petition alleging, *inter alia*, Taylor & Associates, L.P. was not an entity which qualified as a debtor under 11 U.S.C. § 109(b).

Since Appellant Bush alleged Dudley Taylor was a general partner of Taylor & Associates, L.P., the Bankruptcy Court ruled Dudley Taylor had standing to oppose the involuntary petition. However, in a memorandum filed January 26, 1996, the Bankruptcy Court concluded Taylor & Associates, L.P. was a limited partnership under Tennessee law and thus, eligible to be a debtor under Chapter 7. The court then denied Dudley Taylor's motion to dismiss. *In re Taylor & Assocs., L.P.*, 191 B.R. 374 (Bankr.E.D.Tenn.1996), *rev'd,*

___."

---

1. The Court will refer to the documents within the bankruptcy record as "Record ___, p.

*Taylor v. Bush (In re Taylor & Assocs., L.P.)*, 249 B.R. 431 (E.D.Tenn.1997) (Collier, J.).

After a trial on March 1, 1996, the Bankruptcy Court sustained the involuntary petition and entered an Order for Relief under Chapter 7 on March 8, 1996. *In re Taylor & Assocs., L.P.*, 193 B.R. 465 (Bankr.E.D.Tenn.1996). Dudley Taylor appealed the Order for Relief and, on March 28, 1997, this Court vacated the Bankruptcy Court's decision and remanded the case to resolve disputes regarding whether Taylor & Associates, L.P. qualified under Tennessee law as either a general or limited partnership.

Following the remand of this case, the Bankruptcy Court conducted an evidentiary hearing on December 1 and 2, 1997. In a memorandum and order filed April 3, 1998, the Bankruptcy Court ruled the Petitioners/Appellants had failed to establish the existence of a general or limited partnership operating under the name of Taylor & Associates, L.P. The Bankruptcy Court then dismissed the involuntary petition. The Appellants have appealed the dismissal to this Court. In the Bankruptcy Court Petitioners/Appellants argued Taylor & Associates, L.P. was either a limited partnership or a general partnership with the partners consisting of various individuals. On appeal, Appellants have attempted to focus their arguments. Appellants contend Taylor & Associates, L.P. was an implied general partnership with the partners being Dudley Taylor and Joseph Taylor.

## II. *DISCUSSION*

### A. Is Clear and Convincing Evidence the Appropriate Standard to Apply?

■ Appellants contend the Bankruptcy Court erred by applying a clear and convincing evidence standard when determin-

ing whether Taylor & Associates was a partnership consisting of Joseph Taylor and Dudley Taylor as the partners.[2] While acknowledging the Tennessee Court of Appeals decision in *Wheeler v. Haley*, 1993 WL 398489 (Tenn.Ct.App.1993) states clear and convincing proof is required to prove the existence of an oral partnership agreement, Appellants contend the *Wheeler* decision is not binding as it was unreported and conflicted with an earlier Tennessee Court of Appeals case, *Wyatt v. Brown*, 39 Tenn.App. 28, 281 S.W.2d 64, 67 (1955). In *Wyatt*, the court stated, "We think that the greater weight of the evidence showed that Brown and Dearing were partners."

The *Wheeler* opinion relied upon a prior decision by the Tennessee Court of Appeals in *Johnson v. Graves*, 15 Tenn.App. 466, 481 (Tenn.Ct.App.1932) which stated, "[W]hen an [oral partnership contract] is sought to be enforced, the [triers] of the facts are required to carefully scrutinize and weigh the evidence, and should be satisfied of its existence by clear and convincing proof." Appellants, however, contend the Tennessee Supreme Court's decision in *Bass v. Bass*, 814 S.W.2d 38 (Tenn. 1991), illustrates Tennessee chose not to adopt the rule from *Johnson*.

After carefully reviewing Appellants' arguments and the case law on this issue, the Court concludes the Bankruptcy Court was correct in applying the clear and convincing evidence standard. While the court in *Wyatt* appears to have used a "greater weight of the evidence" standard, that court never explicitly discussed the required burden of proof. Furthermore, the clear and convincing evidence standard has long been the law in Tennessee. *See Tidwell v. Walden*, 205 Tenn. 705, 330 S.W.2d 317, 319 (1959); *Johnson*, 15 Tenn. App. at 466.

In *Tidwell*, the deceased's spouse filed a claim for worker's compensation benefits.

---

2. The Bankruptcy Court followed the standard delineated by this Court in its opinion which vacated the Order for Relief. *Taylor v.* *Bush (In re Taylor & Assocs., L.P.)*, 249 B.R. 431 (E.D.Tenn.1997) ( Collier, J.), (Record 25, p. 27).

The employer argued no benefits were due because the deceased was a partner in the business, not an employee. The trial court used the preponderance of the evidence standard in determining whether the deceased was a partner. On appeal, however, the Tennessee Supreme Court made the following statement regarding the required burden of proof, "Contention is made that the alleged partnership, being based upon an oral agreement, should be established by clear and convincing evidence. The authorities clearly support this contention. In other words, if the issue is doubtful, it should be resolved in favor of the [deceased]." *Id.* at 319. Similarly, in *Johnson,* the Tennessee Court of Appeals stated the trier of fact should be satisfied of the existence of an oral partnership agreement by "clear and convincing proof." *Johnson,* 15 Tenn.App. at 481. While Appellants contend the *Bass* decision declined to adopt the rule from *Johnson,* the Court has reviewed *Bass* and cannot find support for this assertion.[3] In fact, the Court finds the contrary is true and the *Bass* decision actually relied, in part, upon the *Johnson* ruling. *See Bass,* 814 S.W.2d at 43.[4] Accordingly, under Tennessee law, an oral partnership agreement must be proved by clear and convincing evidence. The Court will, thus, **AFFIRM** the Bankruptcy Court's ruling on this issue.

**B. Was There Sufficient Evidence Joseph Taylor and Dudley Taylor were Partners in Taylor & Associates, L.P.**

The existence of Taylor & Associates, L.P. as a partnership is crucial to the

Appellants' continuation of their involuntary petition. To qualify as a debtor under Chapter 7 of the Bankruptcy Code, an entity must be a "person," defined as including an "individual, partnership, and corporation." 11 U.S.C. § 101(41). *See also* 11 U.S.C. § 101(13). Appellants correctly state if Taylor & Associates, L.P. is a sole proprietorship of Joseph Taylor, deceased, Taylor & Associates, L.P. would become a part of Joseph Taylor's individual estate and would not be a debtor under Chapter 7.

Tennessee defines a partnership as "an association of two (2) or more persons to carry on as [co-owners] a business for profit." *Tenn.Code Ann.* § 61-1-105(a). Generally, the "receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business." *Tenn.Code Ann.* § 61-1-106(4). When "determining whether [a person] is a partner, no one fact or circumstance may be pointed to as a conclusive test, but each case must be decided upon consideration of all relevant facts, actions, and conduct of the parties." *Bass,* 814 S.W.2d at 41. *See also Pettes v. Yukon,* 912 S.W.2d 709, 715 (Tenn.Ct.App.1995) (noting courts look to "the totality of all relevant facts").

> [T]he existence of a partnership depends upon the intention of the parties, and the controlling intention in this regard is that ascertainable from the acts of the parties.... Although a contract of partnership, either express or implied, is essential to the creation of partnership status, it is not essential that the parties
>
> an individual should not be denied the opportunity to establish the existence of a business partnership into which they, like any other competent individual, may enter into, whether or not cohabitation exists. With the foregoing principles in mind, we cannot agree with the analysis employed by the Court of Appeals in this case....
>
> *Bass,* 814 S.W.2d at 43.

---

**3.** In *Johnson,* the court ruled there was insufficient evidence of a partnership whereas in *Bass,* the Tennessee Supreme Court reached the opposite conclusion. However, the difference in holdings was based on the particular facts in each case, not on any change in the law.

**4.** The *Bass* court stated:
    The obvious implication to be drawn from the *Johnson* and *Thornton* decisions is that

actually intend to become partners.... The existence of a partnership is not a question of the parties' undisclosed intention or even the terminology they use to describe their relationship, nor is it necessary that the parties have an understanding of the legal effect of their acts.... *It is the intent to do the things which constitute a partnership that determines whether individuals are partners, regardless if it is their purpose to create or avoid the relationship.... Stated another way, the existence of a partnership may be implied from the circumstances where it appears that the individuals involved have entered into a business relationship for profit, combining their property, labor, skill, experience, or money.*

*Bass*, 814 S.W.2d at 41 (citations omitted) (emphasis added). *See also Wright v. Quillen*, 909 S.W.2d 804, 808 (Tenn.Ct. App.1995) ("[T]he circumstances must show that the parties intended to share the profits from their joint enterprise."); *Smithson v. White*, No. 87–380–II, 1988 WL 42645, at *4 (Tenn.Ct.App. May 4, 1988) (noting a partnership "can only arise by a voluntary agreement between the parties"). The party who alleges the existence of a partnership bears the burden of proof. *Pettes*, 912 S.W.2d at 715.

■■■ Tennessee courts have analyzed whether a partnership agreement exists in light of contract law. *See Bass*, 814 S.W.2d at 41 (noting "a contract of partnership, either express or implied, is essential to the creation of partnership status"). "[W]hile it is not essential that ... [contracts of partnership] be in writing, nevertheless, when an oral contract is sought to be enforced the [triers] of fact are required to carefully scrutinize and weigh the evidence, and should be satisfied of its existence by clear and convincing proof." *Wheeler v. Haley*, No. 91–267–I,

1993 WL 398489, at *4 (Tenn.Ct.App. Oct. 1, 1993) (citation omitted). "[T]o be an enforceable contract it must, among other elements, result from *a meeting of the minds in mutual assent to terms*, must be based upon sufficient consideration, and *must be sufficiently definite." Id.* at *5 (citations omitted). Furthermore, as the Court stated in its previous opinion in this case, "[w]hether a general partnership existed would rest upon consideration of precisely who were the partners, when exactly was the partnership formed, how long did the partnership last, was it dissolved by the withdrawal of partners, and what was the purpose of the partnership" (Record 25, p. 27).

■■■ In their appeal of the Bankruptcy Court's decision, Appellants do not contend the court erred with respect to its factual findings. Similarly, during oral argument, the Appellee Dudley Taylor stated he was not contesting the Bankruptcy Court's factual findings.[5] Instead, the issue on appeal is whether the factual evidence was sufficient to support the conclusion Taylor & Associates, L.P. was a general partnership consisting of Joseph Taylor and Dudley Taylor as the partners. Since this is a legal conclusion, this Court will perform a *de novo* review of the Bankruptcy Court's determination. *In re Isaacman*, 26 F.3d at 631.

The Bankruptcy Court made several findings of fact regarding whether Joseph Taylor and Dudley Taylor expressed an intent to do things which constituted a partnership. At times, both Joseph Taylor and Dudley Taylor held themselves out to others as being partners (Record 39, ¶¶ 66, 102, and 105). Whether Joseph Taylor and Dudley Taylor could exercise any control over the partnership, however, is contradicted by other evidence. In a memorandum to David Andrew,[6] Dudley Taylor

---

**5.** More specifically, the Appellee stated the Bankruptcy Court reached the correct conclusion and found there was insufficient evidence of a partnership despite also finding Dudley Taylor's testimony was not credible.

**6.** David Andrew was an attorney Joseph Taylor retained to provide advice as to whether

described Taylor & Associates, L.P. as a general partnership for investment purposes (*Id.* at ¶ 98). However, that memorandum asserted Joseph Taylor had no control over the partnership and instead, the memorandum stated control was held by Dudley Taylor and his law partner, Lori Fleishman (*Id*). This issue was also buttressed by a letter Dudley Taylor wrote to Robert L. Crossley, an attorney representing an individual who had requested the return of their investment. As Dudley Taylor wrote:

> [Joseph Taylor] made this disbursement at my request. . . .
>
> [A] few of my friends and clients have invested with [Joseph Taylor] from time to time in what is essentially an investment club arrangement. If one of us comes up with an idea, then we share it with the group and each person is free to participate as he or she sees fit. . . . I respectfully submit that these divorce proceedings have at least temporarily obviated any possibility of an amicable and rather free-wheeling investment arrangement, insofar as participation by Laurel and Ken are concerned. I advanced this idea to Joe and as noted above, requested that he close out any investments that Ken and Laurel may have through our investment club. Joe concurred and acceded to the request resulting in the transmittal to you of the enclosed funds.

(*Id.* at ¶ 109). The factual evidence regarding the purpose of the alleged partnership is also unclear. While the letter to Robert Crossley described an "investment club arrangement," both Dudley Taylor and Joseph Taylor told David Andrew that Taylor & Associates, L.P. was a partnership comprised of individuals who jointly invested in real estate (*Id.* at ¶ 101).

The Bankruptcy Court concluded Dudley Taylor expressed an intent to share in profits and losses with Joseph Taylor. In a letter to Joseph Taylor dated October 26, 1995, Dudley Taylor wrote, "Obviously, that [distribution] would be after a deduction for our share of any and all expenses, whether paid to third parties or in the form of a commission to you" (*Id.* at ¶ 110). Similarly, in an October 31, 1995 letter to Joseph Taylor discussing the cashing out of an investment, Dudley Taylor wrote, "I have some concern as to whether this allows expenses and an appropriate commission for you or others involved in this" (*Id.* at ¶ 113). In that letter, Dudley Taylor also stated, "Joe, Lori also told me that there was a bond deal that you got stuck with. I insist that we at least share that with you". (*Id.*).

The Bankruptcy Court's factual findings also established there were individuals who became aware of Joseph Taylor as a result of their communications with Dudley Taylor (*Id.* at ¶ 126). Dudley Taylor told Mary Lynn Ratcliff of the possibility of investing in bonds through Joseph Taylor. Ms. Ratcliff made such an investment by making a check payable to Dudley Taylor (*Id.* at ¶¶ 127–128). James Ed Rice, Sr., James Ed Rice, Jr., Steve Chase, and Larry Gaggero also invested with Joseph Taylor by either wiring or placing funds in the trust account of Dudley Taylor's law firm.

All of this evidence *lends* support to a conclusion there was an implicit partnership arrangement between Dudley Taylor and Joseph Taylor, but as the Bankruptcy Court correctly concluded, there is no clear indication of the parameters of this partnership. The evidence indicates Joseph Taylor was involved in several activities (*See* Response to Motion to Dismiss Involuntary Petition, Record 3, p. 5 ("Taylor & Associates, L.P. was making investments, lending money, engaging in workout negotiations, and making over 500 cash transactions involving significant sums of money")). Joseph Taylor utilized various business names including Joseph C. Tay-

---

Joseph Taylor had any potential legal exposure because of his failure to include Taylor & Associates, L.P. on an "outside investment activity" disclosure form he completed for Advanced Financial Planning.

lor, Taylor & Associates, Inc., Taylor & Associates, Joseph C. Taylor & Associates, Inc., and Taylor & Associates, L.P. (Record 25, p. 4). While the involuntary petition names Taylor & Associates, L.P., the entity has not always been referred to as such even in this case (Record 39, p. 3 n. 1). Thus, assuming there was some indication of a partnership between Joseph Taylor and Dudley Taylor, there is no evidence to show this alleged partnership operated as the entity, Taylor & Associates, L.P., that the Appellants are attempting to bring into bankruptcy. This is especially evident when one considers the subject of the Appellants' claim against Taylor & Associates, L.P. is that the Appellants purchased securities but never received the items (*See* Response to Motion to Dismiss Involuntary Petition, Record 3, p. 18). However, the Bankruptcy Court specifically found Dudley Taylor never agreed to be a partner with Joseph Taylor in any venture concerning securities and the Appellants have not contested this finding (Record 39 at ¶ 123).

All of this evidence must also be viewed in light of the required burden of proof. The Appellants must prove by clear and convincing evidence the entity they have filed an involuntary petition against, Taylor & Associates, L.P., is a partnership consisting of Joseph Taylor and Dudley Taylor. The clear and convincing evidence standard requires there be no serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *Ingram v. State Industries, Inc.*, 943 S.W.2d 381, 383 (Tenn. 1995); *Middleton v. Allegheny Elec. Co., Inc.*, 897 S.W.2d 695, 697–98 (Tenn.1995). However, as the Court has explained, there is substantial doubt as to whether the Appellants' involuntary petition is against an entity in which Dudley Taylor and Joseph Taylor expressed an intent to be partners. Appellants have not been able to define when the partnership was created nor is it clear that, assuming Dudley Taylor and Joseph Taylor were part-

ners at the time of Joseph Taylor's death, the partnership was organized as the entity Taylor & Associates, L.P. Furthermore, while there has been evidence presented regarding Joseph Taylor's activities with other individuals, there is sparse evidence showing Joseph Taylor evinced an intent to do things *with Dudley Taylor* which constituted a partnership. Since a partnership requires "an association of two or more persons to carry on as [co-owners] a business for profit," *Tenn.Code Ann.* § 61–1–105(a), there must be a finding both Dudley Taylor and Joseph Taylor evinced an intent to act as partners, not just that Dudley Taylor acted in such a manner. Thus, in light of the high burden of proof and because of the serious doubts which remain regarding the parameters, purpose, and duration of any partnership between Dudley Taylor and Joseph Taylor and, more specifically, whether the entity the involuntary petition has been filed against, Taylor & Associates, L.P., is even the entity under which any such partnership operated, the Court will **AFFIRM** the Bankruptcy Court's ruling on this issue.

## III. *CONCLUSION*

The Bankruptcy Court was correct when it applied the clear and convincing evidence standard and in its determination the Petitioners/Appellants failed to prove Taylor & Associates, L.P. was a implied general partnership consisting of Dudley Taylor and Joseph Taylor as the partners. The Bankruptcy Court's opinion is **AFFIRMED**.